IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONWIDE AFFINITY INSURANCE CO. OF AMERICA,** *Plaintiff,* | : : : : | **CIVIL ACTION** |
| v. | : : | No. 19-2119 |
| **JESSICA FONG,** *et al.*, *Defendants.* | : : : | |

**MEMORANDUM**

**I.   Introduction**

This is an action for a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.  Within this action, Plaintiff Nationwide Affinity Insurance Company of America ("Nationwide") seeks a determination of its rights and obligations under a personal automobile insurance policy issued by Nationwide to Defendant Jessica Fong's parents, Co-Defendants Angela and Kelvin Fong.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.[1]

---

[1] The Court finds that the amount in controversy is satisfied because the limit for underinsured motorists benefits under the Nationwide policy is $100,000 per person and Defendants seek coverage in the amount of the policy limits of the Nationwide policy.  ECF No. 21-3.

**II.     Background**

The following facts are derived from the parties' Joint Stipulated Facts (ECF No. 14).  Nationwide insured Angela and Kelvin Fong under a personal automobile insurance policy, which included underinsured motorists coverage.  ECF No. 14 at ¶ 3.  The policy lists "Angela & Kelvin Fong" as the "Policyholder (Named Insured)."  ECF No. 14-1 at p. 3.  The Fong's daughter, Jessica Fong, who resided with the named insureds at the relevant time period along with her husband, was included under the Nationwide policy as a "listed driver."  *Id.* at ¶¶ 12 & 13.

*Nationwide Policy Provisions*

The Nationwide policy included underinsured motorist coverage for accidents resulting in bodily injury to the policyholder or a relative.[2]  *Id.* at ¶ 8.  "Relative" is defined by the policy as "one who regularly lives in **your** household and who is related to **you** by blood, marriage or adoption . . . ."  *Id.* (emphasis in original).  However, the policy contained two exclusions to its underinsured motorists coverage that are relevant here:  (1) the Regular Use Exclusion and (2) the Household Exclusion.  *Id.* at ¶¶ 9 & 10.

---

[2] "**We** will pay compensatory damages, including derivative claims, which are due by law to **you** or a **relative** from the owner or driver of an **underinsured motor vehicle** because of **bodily injury** suffered by **you** or a **relative**."  *Id.* at ¶ 8 (emphasis in original).

"You" is defined by the policy as "the **policyholder** and spouse, if resident of the same household, when the **policyholder** is a person . . . ."  *Id.* at ¶ 11 (emphasis in original).

2

Under the Regular Use Exclusion, the underinsured motorists benefits excludes coverage for "[**b**]**odily injury** suffered while **occupying a motor vehicle** . . . owned by . . . or available for regular use of[] **you** or a **relative**, but is not insured for Auto Liability coverage under this policy." *Id*. at ¶ 10.

Under the Household Exclusion, the underinsured motorists benefits excludes coverage for "[**b**]odily **injury** suffered while **occupying a motor vehicle** owned by [**the policy holder**] or a **relative** but not insured for Auto Liability coverage under this policy." *Id.* at ¶ 9 (emphasis in original).

*Factual Background and Procedural History*

Jessica Fong was involved in a motor vehicle accident on or about October 31, 2017, wherein she was operating a vehicle she owned and which she and her husband separately insured through Allstate Insurance Company. *Id.* at ¶¶ 12-15. It is undisputed that Jessica owns the vehicle she was operating at the time of the accident and that it was available for her regular use. *Id*. at ¶ 18. Allstate rejected Jessica's claim for underinsured motorists coverage relating to that accident because Jessica and her husband had rejected underinsured motorists benefits under their Allstate policy. *Id*. at ¶ 15. Jessica is now pursuing a claim for underinsured motorists benefits through her parents' Nationwide policy. *Id*. at ¶ 16.

3

Nationwide filed the instant Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure seeking a determination of its rights and obligations under the insurance policy issued by Nationwide to Angela and Kelvin Fong.  ECF No. 1.  The parties agreed to resolve this matter by cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 12 at ¶ 1.  The parties filed their respective motions, Nationwide responded to Defendants' Motion for Summary Judgment, and Oral Argument was held on the matter on February 4, 2020.  ECF Nos. 13, 14, 15, 16 &18.

## III. Standard of Review

Summary judgment should be granted "where the moving party has established 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).  Indeed, "[s]ummary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (internal quotation and citations omitted).  "A fact is material if it might affect the outcome of the suit under the governing law."  *Burton*, 707 F.3d at 425.  When

...
...
...
...

reviewing a motion for summary judgment, the court views "the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Id*. "[T]he non-moving party must present more than a mere scintilla of evidence" and must present evidence on which a jury could reasonably find for that party. *Id*. (internal quotation and citation omitted).

"When confronted with cross-motions for summary judgment '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)).

## IV. Discussion

As an initial matter, the Court finds that declaratory judgment is an appropriate remedy in this case. The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. In exercising its discretion under the Declaratory Judgment Act, a district court should consider the following: "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative

convenience of other remedies." *Terra Nova Ins. Co. v. 900 Bar., Inc.*, 887 F.2d 1213, 1224-1125 (3d Cir. 1989) (citation omitted).

The *Terra Nova* factors, taken together, support granting declaratory relief in this case.  First, a declaratory judgment eliminates uncertainty regarding Nationwide's obligation to Defendants.  Second, a declaratory judgment will be convenient to both parties:  it will allow both parties to make decisions with a complete understanding of Nationwide's obligations under the policy.  Third, the public's interest in settling the uncertainty of Nationwide's obligation is neutral.  Fourth, there are no other remedies that will resolve the uncertainty of Nationwide's position without significant cost and inconvenience to the parties.  The Court therefore concludes that declaratory judgment is an appropriate remedy in this case.

Nationwide contends, among other things, that the Nationwide policy's Regular Use Exclusion precludes coverage of Jessica's claim because at the time of the accident, she was driving a motor vehicle that she owned and was available for her regular use, but was not insured for auto liability coverage under the Nationwide policy.  ECF No. 13-3 at pp. 6-8.  Defendants did not directly address whether the Regular Use Exclusion applies in this matter in either the briefings or at Oral Argument, other than to argue that because Jessica is listed by name on the Nationwide policy, she is entitled to the benefits of the policy, including coverage

6

for underinsured motorists. ECF No. 19 at p. 22 ("[Jessica] is listed on the policy, her parents paid a premium for her to be listed on the policy, she's entitled to the benefits of the policy.").[3]

"The basic principles of law governing insurance policy interpretation are well-settled in Pennsylvania." *Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 171 (3d Cir. 2006) (citation omitted). "The goal of interpreting an insurance policy, like the goal of interpreting any other contract, is to determine the intent of the parties." *Id*. "It begins where it must—the language of the policy." *Id*. (citation omitted). "Under Pennsylvania law, the

---

[3] In their briefing, Defendants focused substantially on the argument that the policy's Household Exclusion was unenforceable in light of the Pennsylvania Supreme Court's holding in *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131 (Pa. 2019). *See generally*, ECF No. 16. In *Gallagher*, the Court considered whether a household vehicle exclusion contained in a motor vehicle insurance policy violated § 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law because the exclusion acted as a *de facto* waiver of stacked uninsured and underinsured motorist coverage. *Gallagher*, 201 A.3d at 132.

Defendants argued that the holding in that case, which the Court notes is much narrower than Defendants claim it is, is applicable to the case at hand. Though the Court was reluctant to agree with Defendants on that point, counsel for Defendants abandoned that argument at Oral Argument. ECF No. 19 at p. 20 ("Ms. Fong does not believe this is an issue of stacking, your Honor, so I agree with my colleague that this is not about stacking.").

The Court considers Defendants' concession that this case is not about stacking a total abandonment of their argument that *Gallagher* applies to the instant matter. And, because the Court has determined that the Regular Use Exclusion excludes coverage of Jessica Fong's claim, the Court need not consider whether the Household Exclusion applies.

interpretation of an insurance contract is a matter of law for the court." *Lexington Ins. v. Western Penn. Hosp.*, 423 F.3d 318, 323 (3d Cir. 2005) (citation omitted). Where the language of the insurance contract is "clear and unambiguous, a court is required to give effect to that language." *Id.* (quoting *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986)). Where, however, "a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Id.*

"Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Regents of Mercersburg Coll.*, 458 F.3d at 172 (quoting *Hutchison v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (Pa. 1986) (citation omitted). "Courts should not, however, distort the meaning of the language or strain to find an ambiguity." *Id.* (quoting *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982); *see also*, *USX Corp. v. Liberty Mutual Ins. Co.*, 444 F.3d 192, 198 (3d Cir. 2006) ("[I]n Pennsylvania, and no doubt elsewhere, '[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it.'") (quoting *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir. 1998)).

The policy language in question in this case is the Regular Use Exclusion, which states that the underinsured motorists benefits excludes coverage for "[b]odily injury suffered while occupying a motor vehicle . . . owned by . . . or available for regular use of[] you or a relative, but is not insured for Auto Liability coverage under this policy." ECF No. 14 at ¶ 10.  The parties agree that Jessica Fong's claim under the Nationwide policy is for injury she suffered while occupying a motor vehicle, which she owned and which was available for her regular use, and which was not insured under the Nationwide policy.  That vehicle was instead insured by Jessica and her husband under the Allstate policy.  The provision is not ambiguous, nor do the parties argue that it is.  Moreover, the provision's plain language clearly applies in this case and bars coverage of Jessica's claim for underinsured motorists coverage.

Accepting as true Defendants' argument that Jessica should possess the same benefits the policyholders, her parents, possess under the Nationwide policy, the Court's conclusion that the Regular Use Exclusion applies to Jessica's claim is unaffected.  In fact, it only further supports such a conclusion.  Had either of Jessica's parents made an underinsured motorists claim for injury sustained while operating a vehicle that either of them owned or was available for their regular use but not insured under the Nationwide policy, the Regular Use Exclusion would apply.  If the Court were to rule otherwise in this case, the Court would necessarily

9

be granting Jessica more rights under the Nationwide policy than the named insureds possess.

Furthermore, Defendants do not present any argument that the Regular Use Exclusion is unenforceable on policy grounds. Regardless, any such argument would have been unpersuasive in light of the Pennsylvania Supreme Court's holding that the regular use exclusion is not void as against public policy in *Williams v. GEICO Gov't Employees Ins. Co.*, 32 A.3d 1195, 1209 (Pa. 2011). The Court in that case went so far as to say that a "contrary decision is untenable, as it would require insurers to compensate for risks they have not agreed to insure, and for which premiums have not been collected." *Williams*, 32 A.3d at 1209. As discussed previously, *supra* footnote 2, the Court's holding in *Gallagher* does not affect *Williams*'s precedent, as the facts of *Gallagher* are wholly distinguishable to the facts in the instant matter, as conceded by Defendants.

### V. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 13) will be granted and Defendants' Motion for Summary Judgment (ECF No. 15) will be denied. An appropriate Order follows.

DATED: **April 28, 2020**                    BY THE COURT:

                                                                           **/s/ Chad F. Kenney**

                                                                        CHAD F. KENNEY, J.